UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v.                       )<br>)<br>)<br>MARIO ESPINO,            )<br>)<br>    Defendant.          ) | Crim. No. 04-30020-MAP |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR DISCOVERY OF DRUG EVIDENCE AND
TO ALLOW DEFENDANT'S EXPERT TO WEIGH AND ANALYZE THE DRUGS**

The United States of America, by Michael J. Sullivan, United States Attorney for the District of Massachusetts, respectfully submits the following response to the defendant's Motion for Discovery of Drug Evidence and To Allow Defendant's Expert To Weigh and Analyze the Drugs.

**Background**

On or about September 14, 2004, the defendant filed his Motion for Discovery of Drug Evidence and To Allow Defendant's Expert To Weigh and Analyze the Drugs. The Final Status Conference in this case was held the following day, September 15, 2004, before Hon. Kenneth P. Neiman. During the course of that conference, the court addressed the contents of the defendant's motion. The government indicated at that time that it would work with the defendant's attorney to work out the necessary logistics to enable the defendant to conduct his independent weighing and analysis of the drugs.

1

On or about September 24, 2004, the government sent a letter to the defendant's counsel, asking her to put into writing her description, left on the undersigned counsel's voicemail, of the details of Dr. Cohen's plans for weighing and analyzing the drug evidence. On or about September 28, 2004, the defendant's counsel provided a letter, which is attached as Exhibit A, indicating, among other things, that Dr. Cohen would need an undetermined number of hours over the course of two days to complete his work. In her letter, defendant's counsel also indicated that Dr. Cohen would be using a "desiccator" to complete his work, but provided no description of what a desiccator is or how it will be used in this case and for what purpose.

On October 5, 2004, the defendant, through his counsel, informed the government during a telephone conversation that Dr. Cohen does not have a DEA registration number, which means that he is not authorized to handle controlled substances like the drugs that the defendant seeks to have analyzed in the present case. During that same telephone conversation, the defendant's counsel indicated that she anticipated that a DEA agent would be required to be with Dr. Cohen during the entire time that he was handling the narcotics in this case. She also informed the government that although her letter states that the amount of time required for the weighing and analysis to be performed by Dr. Cohen is unclear, she believed that Dr. Cohen

would require a maximum of two hours on each of two days. The defendant's counsel further indicated that she anticipated that the DEA would maintain the drugs and Dr. Cohen's desiccator in its possession during the course of the "one to two weeks" that Dr. Cohen anticipates keeping a sample of the drugs in his desiccator. The government's understanding from its conversation with defendant's counsel on October 5, 2004, is that a desiccator is used either to remove moisture from a drug sample or to maintain an even level in a drug sample over time. The defendant's counsel's letter of September 28, 2004, does not address the purpose for Dr. Cohen's use of the desiccator.

**Argument**

1.  The government does not object to the defendant's request for information regarding the method used by the government to weigh and analyze the drugs seized from the defendant and will forward that information to the defendant once it is received from the DEA laboratory in New York.

2.  The government does not object in principal to the defendant's request to weigh and analyze the drugs in this case, but does object to the manner in which the defendant proposes to do so for the following reasons:

    a.  The defendant proposes to have Dr. Harvey Cohen of Cambridge Technical Associates conduct the weighing and analysis of the drugs. The DEA's protocol for the handling of drug

evidence requires that a defendant who seeks to independently test drug evidence use an individual chemist or laboratory with a DEA registration number. A DEA registration number is required for any individual or institution to lawfully handle controlled substances like the drugs that the defendant seeks to have weighed and analyzed in this case. Dr. Cohen does <u>not</u> have a DEA registration number, which means that he cannot lawfully be in possession of the drugs seized from the defendant in this case.

    b. The defendant's counsel's intention to request that the DEA provide an agent to be with Dr. Cohen at all times when he is weighing and/or analyzing the drugs in this case, thus obviating the need for Dr. Cohen to have a DEA registration number authorizing him to handle controlled substances, is unreasonable, and the government, therefore, objects to this aspect of the defendant's proposed approach to the independent examination of the drugs in this case. Requiring the DEA to assign at least one agent to accompany the defendant's expert for an undetermined number of hours or for a maximum of two hours on two separate days is an unreasonable burden to place on the resources of that agency, particularly when the defendant could make arrangements with an independent laboratory that is licensed to handle controlled substances and, therefore, could receive the drugs lawfully, maintain a proper chain-of-custody, and conduct such tests on the drugs as the defendant requires without the

logistical complexities and waste of DEA resources associated with the defendant's current proposition.

      c.    The government also objects to Dr. Cohen's proposed use of a "desiccator" during the course of his weighing and analysis of the drugs. As an initial matter, the government notes that the defendant's counsel proposes in her letter of September 28, 2004, to have Dr. Cohen leave the drugs in the desiccator for "one to two weeks" but provides no information about where that evidence will be stored during that time, how it will be secured, or who will be responsible for it. The DEA does not typically maintain drug evidence in its field offices except during trials. Even then, the DEA requires that the drug evidence be secured by sealing it in an evidence bag and maintaining it in that manner while it is stored with other evidence in the field office. As a practical matter, the government -- and by extension the DEA -- simply does not know whether a desiccator can be stored in that manner, how delicate the machinery is, or how it must be handled while the drug sample is inside of it. Furthermore, the defendant has not addressed in any way who will be responsible for the maintenance of Dr. Cohen's equipment if it were to be left in the DEA's custody.

The government's objection to the defendant's proposed use of the desiccator also is based on the defendant's failure to provide any clear description of the purpose for the use of a desiccator in his motion, his letter of September 28, 2004, or during the October 5, 2004, telephone conversation with defendant's counsel.

As is noted above, it is the government's understanding that a desiccator is used either to remove the moisture from a sample of drugs or to preserve the moisture already existing within that sample. To the extent that the apparatus removes moisture from the drugs, the government objects to its use on the grounds that the defendant is charged with distributing a substance containing heroin and, therefore, is responsible for the total weight of the substance distributed and not the weight of the substance after it has been dried out by the use of a desiccator, or any other means for that matter. Similarly, to the extent that the desiccator simply maintains an even moisture level around or within the drugs, the use of the device still is of no practical value under the present circumstances. Reason dictates that the moisture level in the drugs weighed by the defendant's expert prior to their insertion in the desiccator and after they have remained in the desiccator for one to two weeks will be the same if all the desiccator does is maintain an even moisture level. The use of a desiccator under either of those circumstances would not lead to any relevant or admissible evidence, and, given the time and logistical difficulties associated with the proposed use of the device, therefore should not be permitted.

### Conclusion

For the reasons stated above, the government has no objection to the defendant's request for information pertaining

to the methods used by the government in analyzing and weighing the drug evidence in this case. The government also has no objection in principal to the defendant's request to weigh and analyze the drugs in this case. Nevertheless, the government opposes the defendant's motion in its current form on the grounds the manner in which the defendant proposes to conduct the weighing and analysis of the drugs is not feasible and places an unreasonable burden on the government and the DEA and respectfully requests that the motion be denied to that extent.

          Respectfully submitted,

          MICHAEL J. SULLIVAN
          United States Attorney

By: _____
          Thomas J. O'Connor, Jr.
          Assistant U.S. Attorney

Dated: October 6, 2004

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by *hand to*: ~~depositing in the United States mail a copy of same in an~~ (*too*) ~~envelope bearing sufficient postage for delivery:~~

Atty. Elaine M. Pourinski
13 Old South Street
Northampton, MA 01060

This 6th day of October, 2004.

Thomas J. O'Connor, Jr.
ASSISTANT U.S. ATTORNEY

ELAINE POURINSKI
ATTORNEY AT LAW
13 OLD SOUTH STREET
NORTHAMPTON, MA 01060

TEL. (413) 587-9807 • FAX (413) 586-6619

September 28, 2004

Thomas O'Connor
Assistant US Attorney
US Attorney's office
1550 Main St., Room 310
Springfield, MA.

Re: *United States v. Mario Espino*, 04-30020-MAP
Procedures for Analysis and Weighing of Drugs

Dear Attorney O'Connor:

    The drugs will be analyzed by Harvey Cohen, Cambridge Technical Associates, Needham, Ma. Tel: 781-449-4335. It is expected that he will need two days to complete his work. At this point, until he sees the drugs, he cannot say the exact number of hours needed on each day. He will bring his own equipment to weigh and analyze the narcotics. He will also be bringing a desiccator and will leave a small amount of drugs, up to one gram, in the desiccator for approx. one to two weeks. He will then return to weigh the drugs that were in the desiccator.
    One issue which often arises is who will be responsible for heat sealing the drugs once they are taken out of the bags. Mr. Cohen tells me that often times the FBI or DEA have heat sealers in their offices so it is usually not a problem. He would need to be notified in advance whether he needed to bring the materials to heat seal the drugs once he has completed his work. In the past he has conducted his work in the DEA or FBI office with an agent present at all times.
    Please call me if you have any further questions. Mr. Cohen can be contacted for the sole purpose of discussing the mechanics of the procedure, what he needs, and arranging a date and time

Sincerely yours,

Elaine Pourinski, Esq.

EXHIBIT A