UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
)
v. )
) Criminal No. 04-30020
)
MARIO ESPINO, )
   Defendant )

## DEFENDANT'S SENTENCING MEMORANDUM

Defendant Mario Espino submits this memorandum along with letters, documents and the testimony of Dr. Harvey Cohen to assist the court in sentencing.

The Supreme Court recently has determined that the application of the Sentencing Guidelines violates the Sixth Amendment and is thus unconstitutional and therefore not mandatory. See *United States v. Booker* and *United States v. Fanfan*, 543 U.S. ___ (2005). The guidelines are to be used as an advisory tool to assist the court in determining a reasonable sentence. The court is not bound by the guidelines and is not limited by them.

In the present case, with a total weight of 100.7 grams and a Total Offense Level of 21 (which includes acceptance of responsibility and minor role adjustments) and a Criminal History Category of I, the guidelines imprisonment range is 37 to 46 months. If the court were to determine that the defendant was safety valve eligible, the Total Offense Level would be 29 and the guidelines imprisonment range would be 30 to 37 months. If the Court were to determine that the Government failed to prove beyond a reasonable doubt the drug weight of 100 grams or more then the Total Offense Level

would be 19 (without the safety valve), or in addition to the safety valve adjustment would be 17 for a guideline imprisonment range of 24-30 months.

18 U.S.C. 3553(a) sets forth the factors to be considered in imposing a sentence:

> (a) Factors to be considered in imposing a sentence. – The court shall impose a sentence *sufficient, but not greater than necessary*[1], to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct.
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and sentencing range established [no longer mandatory];
> (5) and pertinent policy statement issued by the Sentencing Commission.....;
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct and
> (7) the need to provide restitution....

For the reasons set forth below, which address the factors to be considered in imposing a sentence and the advisory Sentencing Guidelines, the defendant requests that the court sentence him to 13 months.

## THE DEFENDANT'S CRIMES CONSTITUTED ABERRANT BEHAVIOR

U.S.S.G. 5k2.20 allowed for a departure in a criminal case if a defendant's criminal conduct constituted aberrant behavior. In the sentencing guidelines aberrant behavior is defined in the following manner:

---

[1] italics added

> "...a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life.

"In determining whether the court should depart on the basis of aberrant behavior, the court may consider the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the offense. Courts have allowed a departure on this ground when there was more than a single criminal transaction. See *United States v. Delvalle*, 967 F. Supp. 781 (E.D. N.Y. 1997)(defendant's involvement in drug conspiracy on two different days, separated by a week, were so loosely related they could be seen as a single act of aberrant conduct warranting twelve-level departure.)

In the present case, Mr. Espino entered pleas of guilty to three counts of distribution of heroin which occurred relatively close in time on March 7, 2003, March 26, 2003 and May 13, 2003. The total weight of the drugs was approximately 100.7 grams. Mr. Espino acted as a 'mule' or courier to deliver the drugs to the undercover officer. Videotape evidence demonstrates that he spent less than one minute on each occasion in the car with the undercover officer. He did not display any level of sophistication regarding the drug trade and did not engage in any negotiations with the undercover officer regarding the sale of narcotics. He does not speak English. There is no evidence that he had any knowledge of or control over the amount or purity of the drugs he delivered. All of the negotiations were handled over the phone with an individual named "Bladi."[2] (PSR 4) In the discovery provided by the Government, there is no evidence that Mr. Espino participated in a drug enterprise on any other level than the delivery of drugs to the buyer. See *U.S. v. Garcia*, 920 F.2d 153, 155 (2d. cir.

---

[2] "Bladi" was never charged with any offenses.

1990)("the culpability of a defendant courier must depend necessarily on such factors as the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the enterprise"). In addition, there is no evidence that Mr. Espino made any profit from his role as a courier.

On April 21, 2004, Mr. Espino was arrested at his place of employment, The International Mini-Mart. There is no evidence to suggest that Mr. Espino was engaged in a drug operation over a long period of time or that he engaged in any illegal activity after the date of the last transaction which occurred almost one year prior to his arrest date.

Mr. Espino is thirty two years old and has no prior record, either in the United States or the Dominican Republic (see attached documents)[3]. He has maintained steady employment throughout his life. (PSR 13) See *U.S. v. Jagmohan*, 909 F.2d 61m 65 (2d. Cir. 1990)(solid employment record; naiveté displayed in committing offense) He left school at an early age to help out his family that was struggling economically. (PSR 13) For two years prior to his incarceration, he had been working at the International Mini-Mart.[4] The owner of the store was a friend from the Dominican Republic who had invited Mr. Espino to work for him in the store. He would often work without pay until the Mini-Mart was making a profit. Mr. Espino is the father of a 5 year old daughter. Until his incarceration on these matters, he sent monthly child support payment to the mother of his child.

---

[3] The documents were obtained by his family in the Dominican Republic to demonstrate to the court that Mr. Espino has always been a law-abiding citizen.
[4] See letter of Yasmin Rodriguez

There are no indicators which would suggest that Mr. Espino will re-offend. He describes his behavior as "stupid" and chooses to blame no one but himself. By all accounts, Mr. Espino has always been a decent, kind, hardworking individual. His sister, Maria Espino, stated that the family was shocked that he became involved in a criminal matter. The sad reality of this case is that Mr. Espino was befriended by certain individuals and was used by them to deliver the drugs and thus avoid their own arrest and prosecution. What initially started out as doing a friend a favor, not wanting to say no or not being able to say no, ended up being something which made Mr. Espino very uncomfortable, which counsel suggests is one reason why these offenses occurred over a relatively brief period of time. Mr. Espino never engaged on a deeper level in the drug enterprise and continued to work full time at the International Mini-Mart. He stopped being a courier for these individuals.

**THE DEFENDANT'S ROLE IN THE OFFENSES**

U.S.S.G. 3B1.2(a) allowed for a downward departure if the defendant was a minimal participant in any criminal activity. This adjustment was "intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." "..The defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant."

As stated previously, Mr. Espino was used to deliver the drugs to the undercover officer. He was not involved in the negotiations or any other aspect of the drug enterprise. Although Mr. Espino is charged as a single participant, the evidence suggests that there were others involved who were part of a drug enterprise. These

individuals were never charged or apprehended. The Government has provided no evidence to suggest that Mr. Espino was aware of the scope and structure of this drug enterprise, only that he delivered the drugs on three separate occasions.

## THE DEFENDANT IS SAFETY VALVE ELIGIBLE

It has been determined that the defendant meets criteria 1 through 4 of U.S.S.G. § 5C1.2. (PSR 16) U.S.S.G. § 5C1.2(a)(5) provides that:

> Not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Although Mr. Espino never sat down with the Assistant United States Attorney to discuss this case he did provide information to the Government on the date of his arrest. The discovery provided by the Government revealed that Mr. Espino watched a portion of the videotape evidence and told that officer that he recognized himself and another person named "Junior." He stated that the car in which he was driving was registered to him but owned by Junior. He admitted that he did give the drugs to the undercover officer and that he was instructed by Junior to do so. He did not specifically recall any other transactions but may have done two others. He further stated that Junior picked him up to make the deal and that he gave all of the money to Junior. He initially stated that he hadn't seen him in months but he might have moved to New York. When questioned about "Bladi" he stated that he knew him as a friend and had last seen him a few days before when he went into the Mini-Mart. He further stated that Bladi is Junior and identified a black and white photograph of an individual as both Bladi and Junior. He

also identified another individual. He repeated that he last saw Bladi a few days prior and that he could be in New York.

Mr. Espino was forthcoming in his statements to the police. He did not deny that he was the individual in the videotape even though the quality of the videotape was not very good. He admitted to his involvement. As stated previously, Mr. Espino was used by his 'friend' to deliver drugs on three occasions. He was not involved in the drug enterprise on any other level. The court should make a determination that Mr. Espino meets all of the criteria for safety valve eligibility.

**OTHER FACTORS**

Mr. Espino is a citizen of the Dominican Republic. His elderly and infirm parents live there. They are distraught that their son has become involved with the criminal justice system in the United States. They have always known him to be a law-abiding citizen, a hard worker and a good son. Because of their ages and illnesses, they worry that they will never see him again if he is imprisoned for any length of time. In addition, since his incarceration Mr. Espino has been unable to send the much needed child support payments.

Mr. Espino faces almost certain deportation due to these charges. There is no waiver for drug convictions (with the exception of possession of a small quantity of marijuana). Upon hearing this possible outcome, his sister expressed sadness for her brother because "he had worked so hard to get his green card."

**TOTALITY OF THE CIRCUMSTANCES**

A sentencing court may consider a variety of factors in determining a reasonable sentence and one which is below the advisory Guidelines. The factors, taken together,

which warrant a sentence below the advisory Guidelines in this case are those which have been discussed previously or have been the subject of an evidentiary hearing: the aberrant nature of Mr. Espino's behavior, his long history of employment, his lack of sophistication and knowledge of the drug enterprise, his minimal role in the offense, the safety valve eligibility, the reasonable doubt regarding the drug weight of 100.7 grams, the detrimental effect that incarceration will have on his parents and his child, and the ultimate punishment which he faces, deportation and exclusion from the United States.

                                        Respectfully submitted
                                        By:

                                        Elaine Pourinski
                                        13 Old South Street
                                        Northampton, MA. 01060
                                        413-587-9807

Santo Domingo, 2 de mayo del 2005

Señor Juez, Fiscal y Jurado

Mi nombre es, OCTAVIA ESPINO BUENO, hermana de MARIO ANTONIO ESPINO BUENO, quien por ustedes será juzgado, por lo que les dirijo la presente carta, para después de saludarles, expresarle lo siguiente:

MARIO es el octavo Hermano de una familia pobre, como tantas familias de Republica Dominicana, MARIO y todos sus Hermanos fuimos criados en un Hogar Humilde y con un esfuerzo inmenso de parte de nuestros padres nos proporcionaron la educación que sus posibilidades les permitieron, resultado, solo una hermana pudo ir a la universidad y siete no, entre los que se encuentra él, pero a todos nos inculcaron el temor a Dios y el amor por su familia. Señores, MARIO ANTONIO ESPINO BUENO, no será perfecto, porque solo Dios lo es, pero si les puedo asegurar que es una persona de buenos sentimientos, obediente y de buenas costumbres, MARIO, vivió en mi casa, en Santo Domingo, desde que me casé en el año 1988, hasta que se marchó hacia los Estados Unidos, y desde que nació lo he visto crecer, quizás ustedes pensarán que me expreso así de él porque es mi hermano, pero nosotros somos una familia que no aceptamos ni apoyamos cosas mal hechas, pero no, lo hago porque me consta que es un buen muchacho a pesar de cualquier error que pudo haber sido inducido a cometer, solo les pido que por favor piensen que somos seres humanos, que podemos equivocarnos, pero que también podemos rectificar a tiempo. Les pido que por amor a dios me les den una oportunidad, que mi hermano a sido una persona honrrada y de buenos sentimientos y se que por él ser tan buen hijo y hermano, Dios no lo va a desamparar y ustedes serán benevolentes con él.

Por favor les ruego, por amor a Dios, que si mi hermano ha cometido algún error, que me les den una oportunidad, que solo Dios sabe cuanto hemos sufrido sus familiares, nuestra anciana madre ha sido ingresada dos veces al Hospital, desde que su hijo menor fue detenido y nuestro anciano padre, con sus casi noventa años encima, también.

Como quisiera poder expresarles todo lo que estoy escribiendo de frente a ustedes y mirándole a los ojos, pero dada las circunstancias no es posible, para que puedan saber que estoy diciendo la verdad y les hablo con el corazón en las manos, tengan misericordia de nuestro hermano y de todos nosotros, por favor.

ATT.   *Octavia Alt. Espino Bueno*

*Señor Juez y Abogado me dirijo a ustedes con el mayor respeto, pidiéndole compasión por mi hijo ya que es un buen hijo, un buen hermano y una buena persona. Y les ruego con todo el dolor de una madre que esta sufriendo por su hijo, ya que Mario es quien se encarga de mantención y medicinas; yo soy una señora enferma y sufro por la ausencia de mi hijo. Señor Juez, disculpe, pero por favor, ya mi hijo tiene un año encerrado, le pido que ese tiempo sea suficiente para pagar su error, pero no solo el, son infinitas las lagrimas que e derramado por mi hijo, yo le pedido a Dios y le pido a ustedes que por favor les den la libertad a mi hijo, una vez mas le pido compasión, por que estoy segura que por tener tanta fe en Dios y orar tanto por mi hijo, esas oraciones son la que me dan fuerza para soportar esa pena que siento, pero les pido, les suplico que tengan piedad por mi hijo, piensen que se lo dice una madres desesperada por el sufrimiento de su hijo.*

Att. *Ramona altagracia* (signature)

Señor Juez y Abogado al igual que mi esposa les pido con mucho respeto, misericordia por mi, les pido que le den la libertad, les suplico que tengan compasión por este padre que sufre por su hijo, ya que soy un señor mayor y enfermo y mi hijo es que se encarga de nosotros de mantención y medicina, este sufrimiento acorta cada día la vida, por que Mario es un buen hijo, buen hermano, y buen amigo, le pido que todo este tiempo allá sido suficiente para pagar el error que cometió. Nosotros estamos sufriendo por la ausencia de mi hijo, tenga compasión por el sufrimiento de este padre que siente que no soporta más el sufrimiento y la ausencia de mi hijo, quiero que sepas que quien les habla es un padre lleno de dolor y pena y lo único que puedo hacer es pedirle a Dios y a ustedes que tengan compasión por mi hijo y les den su libertad.

**Att.** *Nazario Espino*

May 9 2005

To Whom It May Concern:

We are writing this letter in behalf of Mario Espino , we known Mario since Dominican Republic. My husband went to school with him, he was a good student and he'a good friend . He came to the United States to work. I personally know him for only five years he helped me a lot when I first started my business when I gave birth of my son he used to work long hours sometimes with no pay . He never said no to me and I will always appreciate him for helping me. I hope this letter can help him a little in your decision .

Sincerely,

1041437

924930                                    1000

ESPINO BUENO MARIO ANTONIO

13623 - 59

CASTILLO,R.D.                             059-0013623-4

DOMINICANA                                COMERCIANTE

                                          CASTILLO,R.D.

9 - 4 - 1973          32                  SOLTERO        ( )

SANTO DOMINGO,R.D.                VEINTISIETE              27

ABRIL        04

                                  2005

4272005       0                   LIC. HECTOR J. DIAZ ACOSTA
                                      TTE. CORONEL, P.N.

 

                                                    LSANTOS
                                          0    04 27       62    61



# CERTIFICACION

Número: 2005-005891

Nos, **Lic. GILBERTO NUÑEZ ABREU**, Procurador Fiscal Adjunto del Distrito Nacional, certifica que en los sistemas de información de la Procuraduría Fiscal del Distrito Nacional, no aparece registrado ninguna información de casos judiciales abierta contra el (la) Señor(a) MARIO ANTONIO ESPINO BUENO Portador (a) de la cédula de identidad y electoral No: 059-0013623-4



En la Procuraduría General de la República no consta que la parte interesada haya sido Condenada Jurídicamente por violación a la Ley Penal

Firma Enc Dpto Antecedentes Penales

Por lo que expide el presente:

## CERTIFICADO DE NO ANTECEDENTES JUDICIALES

En la ciudad de Santo Domingo de Guzmán, Distrito Nacional, República Dominicana a los 27 días del mes de Abril del año dos mil cinco (2005)

(Valido por 30 dias).



**Lic. GILBERTO NUÑEZ ABREU**
Procurador Fiscal Adjunto del Distrito Nacional

---

Palacio de Justicia de Ciudad Nueva, calle Fabio Fiallo Esq. Beller • Santo Domingo, Distrito Nacional, República Dominicana
fiscalia.dn@verizon.net.do • Tel.: (809) 221-6400 • Fax: 686-2652
RNC - 4-01-51615-2



